Filed 3/20/15  P. v. McClintock CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL A. McCLINTOCK,<br><br>    Defendant and Appellant. | F066826<br><br>(Super. Ct. Nos. BF141461A &<br>BF142714A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

J. Edward Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and John A. Bachman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Poochigian, J. and Smith, J.

A jury convicted appellant Michael A. McClintock of two counts each of driving under the influence of alcohol or drugs while having a prior felony DUI conviction within 10 years (counts 1 & 7/Veh. Code, §§ 23152, subd. (a) & 23550.5),[1] driving with a blood-alcohol content of 0.08 percent or greater while having a prior felony DUI conviction within 10 years (counts 2 & 8/§§ 23152, subd. (b) & 23550.5), driving under the influence of alcohol or drugs while having three prior felony DUI convictions within 10 years (counts 3 & 5/§§ 23152, subd. (a) & 23550), driving with a blood-alcohol level of 0.08 percent or greater while having three prior DUI felony convictions within 10 years (counts 4 & 6/§§ 23152, subd. (b) & 23550), and driving while his driving privilege was suspended (counts 11 & 12/§ 14601.2, subd. (a)) and one count each of evading a peace officer (count 9/§ 2800.2) and resisting arrest (count 10/Pen. Code, § 148, subd. (a)(1)).  In a separate proceeding, the court found true an on-bail enhancement (Pen. Code, § 12022.1), two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)), and five prior DUI convictions (§ 23540).

On March 4, 2013, the court sentenced McClintock to an aggregate prison term of eight years four months:  the aggravated term of three years on his DUI conviction in count 1, a consecutive eight-month term on his DUI conviction in count 7 (one-third the middle term of two years), an eight-month term for his evading a police officer conviction in count 9 (one-third the middle term of three years), a two-year on-bail enhancement, two one-year prior prison term enhancements, and concurrent 90-day terms, with credit for time served, on each of his convictions for driving while his driving privilege was suspended and for resisting arrest, and stayed terms on the remaining counts.

On appeal, McClintock contends:  1) the court abused its discretion when it denied his motion to sever;  2) the court denied him his constitutional right to due process when

[1]     Unless otherwise indicated, all further statutory references are to the Vehicle Code.

it denied this motion; and 3) the court abused its discretion when it denied his motion for a new trial. We affirm.

**FACTS**

*The Trial*

During the trial in this matter, California Highway Patrol (CHP) Sergeant Shaun Crosswhite testified that on April 7, 2012, at approximately 1:00 a.m., he was on patrol traveling north on Highway 99 in Bakersfield when he observed a car driven by McClintock drift from one lane into another. Crosswhite followed McClintock off the freeway and saw the left side of McClintock's car travel over the "gore point" that divided the main highway from the off ramp. As it continued to travel on the surface streets, McClintock's car drifted out of its lane and within its own lane. Crosswhite activated his overhead lights and, after passing F Street, he activated his siren but the car did not stop until it made a right turn onto M Street.

Crosswhite contacted McClintock through the driver's window and noticed a strong odor of alcohol in the car. CHP Officer Jeremiah Bridges arrived on the scene and had McClintock exit the car. McClintock nearly stumbled as he exited the car and his gait was unsteady as he walked to the rear of Bridges's patrol car. Bridges also noticed that McClintock had a strong odor of alcohol on his breath, his eyes were red and watery, his speech was slurred, and he was lethargic and unresponsive most of the time. After McClintock was unable to perform a field sobriety test, Bridges concluded that McClintock was too inebriated to perform any tests and he did not conduct any more. A breathalyzer test performed at 1:43 a.m. indicated that McClintock had a blood-alcohol content of 0.22 percent. A second test performed at 1:47 a.m. indicated that he had a blood-alcohol content of 0.21 percent.

Bridges also testified that as part of the process of administering a breathalyzer test, an officer must watch the subject that is going to be tested for at least 15 minutes to make sure he or she does not burp, regurgitate, or drink or ingest anything. This prevents

3.

the introduction of alcohol into a subject's mouth that does not come from his or her breath, which can skew the test results. During the April incident, Bridges observed McClintock at least 30 minutes prior to administering the breathalyzer test. During that time, he did not observe McClintock do any of the above noted things that could affect the test results.[2]

Kern County Sheriff's Deputy Daniel Willis testified that on June 16, 2012, at approximately 12:50 a.m., he was traveling west on Hageman Road in Kern County when he saw a car driven by McClintock in front of him swerve between lanes and almost hit a pickup. Willis drove his patrol car behind McClintock's car and activated his car's overhead lights. McClintock's car came to a stop at a red light at Calloway Drive. However, when the light turned green, McClintock made a U-turn, accelerated eastbound on Hageman, and turned left into a shopping center parking lot. He accelerated through the parking lot before exiting the lot and traveling northbound on Calloway Drive. McClintock then made a left turn through a red left turn arrow and turned into a church parking lot and traveled westbound through the lot. As he reached the edge of the lot, McClintock turned north, knocked down a handicap parking sign, and accelerated through a grassy field with a playground. When McClintock came to a brick wall, he turned his car around and drove back toward Calloway Drive. McClintock then drove over a sidewalk and traveled northbound in the southbound lane on Calloway Drive.[3]

Kern County Sheriff's Deputy Justin Sawaske testified that he responded to the area and saw McClintock traveling north in the southbound lane of Calloway Drive.

---

**2** Lab Technician Corina Anderson testified at trial regarding how the breathalyzer worked and how its accuracy was maintained. She also testified that a weekly accuracy test performed on the breathalyzer the previous week, on April 9, 2012, disclosed no errors or issues with the machine during the previous week.

**3** Willis estimated that during part of the chase in the shopping center parking lot, McClintock traveled at 75- 80 miles per hour and that during part of the chase in the church parking lot, he traveled between 50-65 miles per hour.

McClintock then turned left into a commercial complex parking lot and came to a stop after his car ran into a planter and became "high centered." McClintock got out of the car and ran, but he was eventually tackled and handcuffed by Sawaske. McClintock's eyes were bloodshot and his speech was slurred. After he failed a horizontal gaze nystagmus test, Sawaske concluded that McClintock was under the influence of alcohol. A test on a blood draw taken from McClintock shortly after 4:19 a.m. indicated that McClintock had a blood-alcohol content of 0.15 percent.

***The Motion to Sever***

Counts 1, 2, 3, 4, and 11 were based on the April 7, 2012, incident, whereas the remaining counts were based on the June 16, 2012, incident. On October 30, 2012, prior to the start of trial, defense counsel moved in limine to sever counts 1 through 4 from the remaining counts. During a pretrial hearing on in limine motions, defense counsel argued the defense would be prejudiced by the failure to sever because: 1) the evidence regarding the April 7, 2012, offenses was not cross-admissible at a trial of the offenses that occurred on June 16, 2012, and 2) the facts of the second case and the knowledge that McClintock "picked up" a DUI in April and another in June would inflame the jury. The court denied the motion.

Subsequently, during jury instructions, the court charged the jury that as to counts 1 through 4 "[t]he breath sample shall be collected only after the subject had been under continuous observation for at least fifteen minutes prior to collection of the breath sample, during which time the subject must not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten, or smoked."

On November 5, 2012, the jury began deliberating at 4:30 p.m. The next day, at 9:56 a.m., the jury sent a note to the court asking as to counts 1 to 4: "What constitutes 'continuous observation'?"; whether in counts 1 and 3 they were to consider the 15 minutes continuous observation time; and "When did the time begin, and when did it end?" The jury also requested a readback of Lab Technician Corina Anderson's

5.

testimony. At 10:44 a.m., the court responded to the note by referring the jury to CALCRIM No. 2110 (driving under the influence) and telling them to use the common meaning of the word continuous. The court also had the court reporter read back Anderson's testimony.

At 2:00 p.m., the jury sent a note to the court stating that they had agreed on counts 5 through 12, but were unable "to reconcile" counts 1 through 4. The court wrote a note back to the jury instructing them to take their afternoon break and "then come back and continue to reasonably deliberate with one another according to [the court's] instructions."

At 4:00 p.m., the jury sent the court a note stating that they had reached a verdict.

On January 4, 2013, defense counsel filed a motion for a new trial alleging, in pertinent part, that the court erred in not severing counts 1 through 4 from counts 5 through 10.

On March 4. 2013, the court denied McClintock's motion for a new trial.

## DISCUSSION

*The Motion to Sever*

McClintock contends that a consideration of the relevant factors support the conclusion that he met his burden of showing he would be prejudiced by the failure to sever. Thus, according to McClintock, the court abused its discretion when it denied his motion to sever. We disagree.

> "[P]ursuant to [Penal Code] section 954 an accusatory pleading may charge two or more different offenses so long as at least one of two conditions is met: The offenses are (1) 'connected together in their commission,' or (2) 'of the same class.'" (*People v. Soper* (2009) 45 Cal.4th 759, 771, fn. omitted.)

> "A defendant, to establish error in a trial court's ruling declining to sever properly joined charges, must make a '"*clear showing of prejudice* to establish that the trial court *abused its discretion* …."'" [Citation.] A trial court's denial of a motion to sever properly joined charged offenses

6.

amounts to a prejudicial abuse of discretion only if that ruling " " " " " " falls outside the bounds of reason.' " " " " " [Citation.] We have observed that 'in the context of properly joined offenses, "a party seeking severance must make a *stronger* showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial." ' [Citations.] [¶] … [¶]

"In determining whether a trial court abused its discretion under [Penal Code] section 954 in declining to sever properly joined charges, 'we consider the record before the trial court when it made its ruling.' [Citation.] Although our assessment 'is necessarily dependent on the particular circumstances of each individual case, … certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' [Citation.]

"First, we consider the cross-admissibility of the evidence in hypothetical separate trials. [Citation.] If the evidence underlying the charges in question would be cross-admissible, that factor alone is normally sufficient to dispel any suggestion of prejudice and to justify a trial court's refusal to sever properly joined charges. [Citation.] Moreover, even if the evidence underlying these charges would *not* be cross-admissible in hypothetical separate trials, that determination would not itself establish prejudice or an abuse of discretion by the trial court in declining to sever properly joined charges. [Citation.] Indeed, [Penal Code] section 954.1 … codifies this rule—it provides that when, as here, properly joined charges are of the same class, the circumstance that the evidence underlying those charges would not be cross-admissible at hypothetical separate trials is, standing alone, insufficient to establish that a trial court abused its discretion in refusing to sever those charges.

"If we determine that evidence underlying properly joined charges would *not* be cross-admissible, we proceed to consider 'whether the benefits of joinder were sufficiently substantial to outweigh the possible "spill-over" effect of the "other-crimes" evidence on the jury in its consideration of the evidence of [the] defendant's guilt of each set of offenses.' [Citations.] In making *that* assessment, we consider three additional factors, any of which—combined with our earlier determination of absence of cross-admissibility—might establish an abuse of the trial court's discretion: (1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense, or the joinder of the charges converts the matter into a capital case. [Citations.]

We then balance the potential for prejudice to the defendant from a joint trial against the countervailing benefits to the state." (*People v. Soper*, *supra*, 45 Cal.4th at pp. 774–775, fn. omitted.)

Here, except for the evading a police officer and the resisting arrest offenses that were filed as a result of the June 16, 2012, incident, the other five charges were identical to the five charges filed against McClintock as a result of the April 7, 2012, incident. Thus, the charges were properly joined. Further, although during the June incident McClintock attempted to evade officers and ultimately disabled his car by driving onto a planter, his conduct was not so egregious during that incident that it was likely to inflame the jury against McClintock with respect to its consideration of the charges that resulted from the April incident. Moreover, the evidence of McClintock's guilt was strong in both cases because during both incidents McClintock drove erratically and exhibited obvious physical symptoms of alcohol impairment and, in each case, his blood-alcohol content measurement was well above the minimum illegal limit of 0.08 percent. Additionally, none of the charges involved a capital offense.

McClintock contends that the following circumstances shocked and inflamed the jury against him and prejudiced the jury's consideration of the charges arising from the April incident. During the June 16, 2012, incident, McClintock's car was observed swerving from side to side and almost striking a pickup. He then led officers on a high speed chase that traversed a shopping center parking lot, ran over a parking sign, drove his car through a playground, and eventually came to a stop when he drove his car on top of a planter. McClintock further contends that the charges that arose from the April incident were weaker than those that arose from the June incident because during the April incident he committed minimal driving violations and he did not perform any field sobriety tests. He acknowledges that he had a higher blood-alcohol content reading during the April incident. However, he contends the results of the breathalyzer test were called into question "due to doubts [by the jury] as to whether the testing officer

8.

complied with the 15 minute observation period requirements" and the jury's note to the court stating that they were not able to "reconcile" counts 1 through 4. We disagree.

We do not find that any of the circumstances of the June incident were so shocking or inflammatory that they affected the jury verdicts with respect to the offenses arising out of the April incident. Although McClintock fled from police during the June incident, during the April incident he also did not immediately stop. Further, the June chase did not last very long and McClintock did not hit any other vehicle or injure anyone during the chase.

We also reject McClintock's claim that the April DUI case was weaker than the June DUI case. During the April incident, McClintock was observed weaving in his own lane and drifting between lanes on Highway 99 and he continued to drift and weave after he got off the highway until he was pulled over. Further, during the April incident, McClintock's car and person smelled like alcohol, his eyes were red and watery, his speech was slurred, his gait unsteady, and McClintock was unresponsive and lethargic to the extent that he was unable to perform any field sobriety tests. Additionally, two breathalyzer tests within an hour after he was stopped showed that McClintock had a blood-alcohol content of 0.21 or 0.22 percent.

Moreover, Bridges unequivocally testified that he observed McClintock for 30 minutes prior to administering the breathalyzer tests to McClintock and that he did not see McClintock eat, drink, regurgitate, burp, or smoke anything during that time. Further, lab technician Anderson testified that the breathalyzer had a second safeguard for ensuring accuracy. According to Anderson, air from deep inside the lung provides an accurate measurement of a person's blood-alcohol content. During a breath test, the breathalyzer takes a measurement of the air at the beginning of the test and a second measurement a few seconds later. The breath of a person who is blowing deep lung air into the breathalyzer should show a consistent blood-alcohol level and if there was an abnormal increase of alcohol, the machine would flag it as "mouth alcohol." However,

9.

no errors or issues occurred with the breath tests performed on McClintock. Thus, there is no merit to McClintock's contention that the results of the breathalyzer may not have been accurate.

Additionally, although the two notes to the court indicate that the jury was confused over the meaning of the phrase "continuous observation," they were eventually able to resolve their confusion and reach a verdict. And, as noted by respondent, the jury's questions to the court and its request for a readback of testimony indicate that it was being thorough and conscientious in reviewing the evidence. Accordingly, we conclude that the court did not abuse its discretion when it denied McClintock's motion to sever.

### McClintock's Was Not Denied His Right to Due Process

"[E]ven if a trial court's ruling on a motion to sever is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts resulted in gross unfairness depriving the defendant of due process of law. [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 281.)

McClintock contends that even if the trial court's ruling on his motion to sever was correct based on the information before it when it ruled on the motion, this court should find he was denied due process and a fair trial because the full nature of the inflammatory facts from the June incident were manifest during the trial. Thus, according to McClintock, he was denied his right to a fair trial as a result of the court's denial of his motion to sever. We disagree.

McClintock's argument is based on the premise that the evidence relating to counts 1 through 4 was weak. Since we rejected this contention in the previous section, we also reject his claim that he was denied his constitutional rights to due process and a fair trial.

10.

*The Motion for New Trial*

"A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion. '"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 524.)

McClintock relies on the same arguments he made in the two previous sections to contend that the court abused its discretion when it denied his motion for a new trial. Since we have already rejected these arguments, we reject this contention as well.

## DISPOSITION

The judgment is affirmed.

11.